IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CA No.: 1:25-CV-01145-WO-LPA

| | | |
|---|---|---|
| JAMES T. MURPHY, JR., on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>MERCK SHARP & DOHME LLC, SPECTRAFORCE TECHNOLOGIES INC., and SPECTRAFORCE HEALTH, LLC,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **PLAINTIFF'S FIRST AMENDED CLASS/COLLECTIVE ACTION COMPLAINT** |

COMES NOW, James T. Murphy, Jr. ("Named Plaintiff" or "Plaintiff Murphy") on behalf of himself and all others similarly situated (collectively "Plaintiffs"), by and through undersigned counsel, and hereby sets forth this collective action for violation of the Fair Labor Standards Act under 29 U.S.C. § 216(b), and a representative action under the North Carolina Wage and Hour Act pursuant to Federal Rule of Civil Procedure 23, and alleges as follows:

## PRELIMINARY STATEMENT

1. Named Plaintiff, on behalf of himself and all others similarly situated, brings this action against Defendant Merck Sharp & Dohme LLC, Defendant Spectraforce Technologies Inc. and Defendant Spectraforce Health, LLC ("Defendants") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*., for unpaid overtime compensation, unpaid wages, and related penalties and damages.

2. Plaintiffs consist of current and former employees and contract workers working as operator technicians or in similar non-managerial positions at Defendant Merck's manufacturing facilities in Durham, North Carolina. Defendants have a policy, pattern or practice of failing to pay employees for all scheduled and overtime hours worked, and failing to pay employees all earned, promised and accrued wages. In particular, throughout the relevant period, Defendants have maintained a corporate policy and practice of shaving Plaintiffs' hours and failing to compensate employees for all hours worked at the promised rate, for failing to properly calculate promised overtime, and for failing to compensate Plaintiffs according to their promised wages. Defendants have also maintained a corporate policy of automatically deducting thirty (30) minutes from Plaintiffs' total daily hours worked for a meal break, irrespective of whether employees took a meal break or not, resulting in an organizational practice of underpaying employees who performed compensable work during meal periods.

3. Defendants' pay practices and policies are in direct violation of the FLSA and the NCWHA; and therefore Plaintiffs, on behalf of themselves, and all others similarly situated, seek promised wages and overtime premiums for all regular-rate and overtime work required, suffered, or permitted by Defendants, liquidated damages and/or other damages as permitted by applicable law; attorneys' fees, costs and expenses incurred in this action.

4. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following collectives:

**Employee Time-Shaving Collective:** All individuals who were, are, or will be employed at Defendant Merck's Durham facility as full-time employee operator technicians, or in similar non-managerial positions, who were subject to a time-shaving and/or rounding policy that impacted overtime hours in excess of forty (40) per week, any time within three (3) years prior to the commencement of this action, through the present.

**Contract Worker Time-Shaving Collective:** All individuals who were, are, or will be employed at Defendant Merck's Durham facility as contract operator technicians, or in similar non-managerial positions, who were subject to a time-shaving and/or rounding policy or practice that impacted overtime hours in excess of forty (40) per week, any time within three (3) years prior to the commencement of this action, through the present.

**Employee Automatic Deduction Collective:** All individuals who were, are, or will be employed at Defendant Merck's Durham facility as full-time employee operator technicians, or in similar non-managerial positions, who were subject to an automatic meal break deduction policy that impacted overtime hours in excess of forty (40) per week, any time within three (3) years prior to the commencement of this action, through the present.

**Contract Worker Automatic Deduction Collective:** All individuals who were, are, or will be employed at Defendant Merck's Durham facility as contract operator technicians, or in similar non-managerial positions, who were subject to an automatic meal break deduction policy or practice that impacted overtime hours in excess of forty (40) per week, any time within three (3) years prior to the commencement of this action, through the present.

5. Defendants are liable for their failure to pay Plaintiffs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

6. Plaintiffs who elect to participate in this FLSA collective action seek compensation for all work performed for Defendants, regardless of whether the work was

performed outside scheduled shift times, compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, post-judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

7. Named Plaintiff also brings this action on his behalf and as a representative of similarly situated current, former, or future operator technicians or similar non-managerial employees and contract workers employed by Defendants, at the Durham manufacturing plant pursuant to the NCWHA.

8. Plaintiff Murphy, who is a North Carolina resident and who worked for Defendants at the Durham plant as an operator technician, asserts that he and the putative class, who work or worked in North Carolina for Defendants, are entitled to compensation for all work performed for Defendants for hours worked up to forty (40), and for an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d). **These promises are not enforceable under the FLSA, and thus the NCWHA is more stringent and provides greater protections to North Carolinians than the FLSA.**

9. Plaintiff Murphy seeks class certification under Rule 23 of the Federal Rules of Civil Procedure for the following classes:

> **Employee Straight Time Time-Shaving Class:** All individuals who were, are, or will be employed at Defendant Merck's Durham facility as full-time employee operator technicians, or in similar non-managerial positions, who were subject to a time-shaving and/or rounding policy that impacted hours up to forty (40) per week, during at least one (1) workweek within two (2) years prior to the commencement of this action, through the present.

> **Contract Worker Straight Time Time-Shaving Class:** All individuals who were, are, or will be employed at Defendant Merck's Durham facility as contract operator technicians, or in similar non-managerial positions, who were subject to a time-shaving and/or rounding policy or practice that impacted hours up to forty (40) per week, during at least one (1) workweek within two (2) years prior to the commencement of this action, through the present.
>
> **Employee Automatic Deduction Class:** All individuals who were, are, or will be employed at Defendant Merck's Durham facility as full-time employee operator technicians, or in similar non-managerial positions, who were subject to an automatic meal deduction policy that impacted hours up to forty (40) per week, during at least one (1) workweek within two (2) years prior to the commencement of this action, through the present.
>
> **Contract Worker Automatic Deduction Class:** All individuals who were, are, or will be employed at Defendant Merck's Durham facility as contract operator technicians, or in similar non-managerial positions, who were subject to an automatic meal deduction policy or practice that impacted hours up to forty (40) per week, during at least one (1) workweek within two (2) years prior to the commencement of this action, through the present.

10. In addition, Named Plaintiff Murphy brings this action against Defendant Merck for disability discrimination in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101, *et seq.*

11. Accordingly, Named Plaintiff seeks all available relief for these claims, including, but not limited to, back pay, front pay, past pecuniary losses, prejudgment interest, compensatory damages, punitive damages, attorney's fees and costs, consequential fees, and all other relief permitted by applicable law.

## PARTIES

12. Defendant Merck is a New Jersey limited liability company with its headquarters in Rahway, New Jersey.[1]

13. Defendant Merck is a pharmaceutical company that manufactures medicines and vaccines.[2]

14. Upon information and belief, Defendant Merck has more than 75,000 employees.[3]

15. Defendant Merck's net revenue for the year 2024 was approximately 64.2 billion dollars.[4]

16. Defendant Merck operates a regional manufacturing facility at 5325 Old Oxford Highway, Durham, North Carolina 27712 (the "Durham Facility").

17. Upon information and belief, Defendant Merck employs approximately 1,000 employees at the Durham Facility.

18. Defendant Spectraforce Technologies is a corporation with its principal office located in Raleigh, North Carolina.

19. Defendant Spectraforce Technologies is a temporary staffing agency that provides staffing for pharmaceutical companies.

20. Defendant Spectraforce Technologies provides workers for Defendant Merck's Durham manufacturing facility.

21. Defendant Spectraforce Health LLC is a limited liability company with its

---

[1] Company Fact Sheet, MERCK, https://www.merck.com/media/company-fact-sheet/.
[2] *See id.*
[3] *See id.*
[4] *Id.*

principal office located in Raleigh, North Carolina.

22. Defendant Spectraforce Health is a staffing and payroll company that provides staffing for pharmaceutical companies.

23. Defendant Spectraforce Health provides workers for Defendant Merck's Durham manufacturing facility.

24. Defendants Spectraforce Health and Spectraforce Technologies have the same principal office address and company officials.

25. At all relevant times, Defendants acted as joint employers with respect to the production of pharmaceutical products, as defined in *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017) and as set forth below.

26. Named Plaintiff is an adult citizen and resident of the State of North Carolina.

27. Named Plaintiff worked for Defendants at the Durham facility as an Operator Technician 1 on the Operations Team from October 2023 to May 2025.

28. Named Plaintiff worked for Defendant Merck as a contract worker through Defendant Spectraforce Technologies and Spectraforce Health between October 2023 and July 2024.

29. Named Plaintiff worked for Defendant Merck as a full-time employee from July 2024 to May 2025.

30. The FLSA collective action and Putative Plaintiffs consist of individuals who have worked for Defendants at the Durham Facility as operator technicians, or in similar non-managerial roles, who were paid an hourly wage, and who were not properly paid their overtime hours worked at time and one half for hours worked over 40 per week given

Defendants' policy and practice of shaving time off of the number of hours employees worked and given Defendants' automatic meal break deduction policy.

31. Named Plaintiff brings this action on his own behalf and, pursuant to 29 U.S.C. § 216(b), as a representative of a proposed collective action of similarly situated employees.

**JURISDICTION AND VENUE**

32. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*., and the claims brought under the ADA, 42 U.S.C. § 12101, *et seq.*

33. The United States District Court for the Middle District of North Carolina has personal jurisdiction because Defendants conduct business in Durham County, North Carolina, which is located within this District.

34. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants conduct business within the Middle District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

35. The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

36. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state claims under the NCWHA because the state law claims arise out of the same nucleus of operative facts as the FLSA claims.

37. All of the alleged causes of action can be determined in this judicial

proceeding and will provide judicial economy, fairness, and convenience for the parties.

38. The evidence establishing liability for the causes of action will be similar, and the state law claims will not predominate or create confusion for a jury.

39. Upon information and belief, during the period relevant to this action, Defendants were employers, joint employers, or members of an integrated, common enterprise, that employed Plaintiffs, pursuant to the FLSA and NCWHA, in that Defendants, or its agents, held or implemented the power, *inter alia*, to control the work performance of Plaintiffs, and Defendants received the benefit of Plaintiffs' labor.

## COVERAGE

40. At all times material to this action, Defendants acted, directly or indirectly, in the interest of an employer with respect to Named, opt-in, and putative Plaintiffs.

41. At all relevant times material to this action, Defendants were employers within the meaning of the FLSA, 29 U.S.C. § 203(d), 29 CFR § 103.40, and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

42. At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206, 207.

43. At all times material to this action, Defendants were enterprises engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business

done of not less than $500,000.

44. At all relevant times, Defendant Merck was a "covered entity" as defined by the ADA because Defendant Merck was an "employer" engaged in "industry affecting commerce" with fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, within the meaning of the ADA. 42 U.S.C. § 12111(2), (5).

## CONDITIONS PRECEDENT TO FILING A LAWSUIT

45. On or about October 29, 2025, Named Plaintiff filed a charge of discrimination against Defendant Merck with the United States Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADA.

46. On or about November 29, 2025, the EEOC issued a Notice of Right to Sue to Plaintiff against Defendant, Dkt. 1-2.

47. Plaintiff has therefore exhausted all administrative remedies prior to commencing this action under the ADA.

## JOINT EMPLOYER ALLEGATIONS

48. Defendant Merck is a pharmaceutical company that manufactures vaccines and medicines.

49. Defendant Spectraforce Technologies is a temporary staffing agency providing staff to pharmaceutical companies.

50. Defendant Spectraforce Health is a staffing and payroll agency providing staff to pharmaceutical companies.

51. Plaintiffs performed nearly all of their work on Defendant Merck's job site

at the Durham facility.

52. Defendant Merck provides the tools, materials, and equipment necessary for Plaintiffs' work.

53. Plaintiffs, including contract workers, wore Merck nametags while working at the Merck facility.

54. Defendant Merck supervised Plaintiffs on a daily basis.

55. Defendants share responsibility over functions ordinarily carried out by an employer such as payroll and onboarding.

56. Defendants share responsibility to direct Plaintiffs and modify the terms and conditions of employment.

**WAGE- RELATED FACTUAL ALLEGATIONS**

57. Defendant Merck is a pharmaceutical company that manufactures medicines and vaccines.[5]

58. Upon information and belief, Defendant Merck has more than 75,000 employees.[6] This includes approximately over 1,000 employees at the Durham, North Carolina location.[7]

59. Defendant Merck employs individuals on product manufacturing lines.

---

[5] https://www.merck.com/media/company-fact-sheet/.

[6] *Id.*

[7] Brian Gordon, Merk opens $1 billion addition in north Durham to boost production of popular vaccine, THE HERALD SUN, MARCH 11, 2025, accessible at: https://www.heraldsun.com/news/business/article301792424.html; NCBiotech Company Directory, Merck & Co. Inc. (Durham), NORTH CAROLINA BIOTECHNOLOGY CENTER, https://directory.ncbiotech.org/company/merck-co-inc-durham.

Employees and contract workers are assigned tasks such as manually inspecting vaccines and running and monitoring production technology and equipment to ensure quality and safety standards are met.

60. Defendant Merck employs individuals across several positions deemed to be "Operations." Employees and contract workers on this team are responsible for running, monitoring, and maintaining the manufacturing technology and equipment.

61. Plaintiffs are generally responsible for ensuring high standards of quality and safety for Defendant Merck's manufactured products.

62. On information and belief, Defendant Merck compensates operator technicians and similar non-managerial employees and contract workers, such as Named Plaintiff, on an hourly basis. Through its handbook, earning statements, and/or other practices and promises, Defendant classifies these employees as hourly non-exempt employees under the FLSA.

63. On or about October 2023, Named Plaintiff was hired on a temporary basis as an Operator Technician 1 through Defendants Spectraforce Technologies and Spectraforce Health.

64. On or about July 1, 2024, Plaintiff Murphy was hired by Defendant Merck as a permanent employee. However, Named Plaintiff's duties, job responsibilities, and management did not change.

65. While working as a contract employee, Plaintiff Murphy submitted his hours worked to Defendants Spectraforce Technologies and Spectraforce Health on a weekly basis and Defendant Merck approved his hours.

66. From the start of his employment in October 2023 until December 2023, Named Plaintiff worked a regular training schedule from 6am to 6pm, five days per week.

67. Beginning in December 2023, Named Plaintiff began working regularly from 6pm to 6am, on a 2-2-3 schedule. The 2-2-3 schedule consisted of two days on, two days off, followed by three days on, and then the reverse for the next week. The 2-2-3 schedule is depicted as follows:

| | **Sunday** | **Monday** | **Tuesday** | **Wednesday** | **Thursday** | **Friday** | **Saturday** |
|---|---|---|---|---|---|---|---|
| **Week 1** | OFF | ON | ON | OFF | OFF | ON | ON |
| **Week 2** | ON | OFF | OFF | ON | ON | OFF | OFF |
| **Week 3** | OFF | ON | ON | OFF | OFF | ON | ON |
| **Week 4** | ON | OFF | OFF | ON | ON | OFF | OFF |

68. Named Plaintiff was paid every two weeks on Friday.

69. On information and belief, Named Plaintiff's workweek was regularly Monday to Sunday.

70. Named Plaintiff was responsible for assisting in the product manufacturing process for Defendant Merck by operating and troubleshooting manufacturing equipment, inspecting vaccines, preparing products to be sent to packers, and cleaning and sanitizing manufacturing equipment and work areas, among other things.

71. Plaintiff Murphy was paid an hourly rate of approximately $24.76 per hour throughout his period of employment.

72. Named Plaintiff's last day of work was April 18, 2025, and he was formally

terminated by Defendant Merck on or about May 23, 2025.

**<u>Defendants' Time-Shaving Practices:</u>**

73. In or about January 2024, Defendant Merck instituted a time rounding policy. The policy affects employees' times by: (1) rounding certain clock-in times up to the nearest quarter hour; and (2) rounding certain clock-out times down to the nearest quarter hour.

74. On information and belief, this rounding policy routinely benefitted Defendant Merck by shaving employees' hours worked at the Durham Facility.

75. This rounding policy applied to all Plaintiffs, and all Plaintiffs were similarly affected by this policy.

76. On information and belief, Defendants regularly failed to properly compensate Plaintiffs for all hours worked, including regular and overtime hours worked.

**<u>Defendant's Work Week Averaging:</u>**

77. On information and belief, Defendants had a routine practice of averaging overtime hours across workweeks.

78. To the best of his recollection, Named Plaintiff would regularly work sixty (60) hours in one workweek and twenty-four (24) hours in the second workweek during one two-week pay cycle.

79. On information and belief, Named Plaintiff was not always compensated for all of his overtime hours that he was due based on the work performed in the first workweek.

80. On information and belief, Defendants averaged Named Plaintiff's overtime

hours over the course of his two-week pay cycle in order to avoid paying Named Plaintiff all promised premium or overtime hours he had earned and accrued.

81. On information and belief, this was due to Defendants' common policy or practice of averaging overtime hours across multiple workweeks. Such policy was common to Plaintiffs, and Plaintiffs were similarly affected by this policy.

**Defendants' Automatic Meal Break Deduction Policy:**

82. Defendant Merck has a written policy automatically deducting a thirty (30) minute meal break from employees' time.

83. Defendant Merck has a written policy instructing employees not to clock in and clock out for meal breaks.

84. Despite this, Defendant Merck has a practice of requiring Plaintiffs to work through their meal breaks or shorten their meal breaks below thirty (30) minutes to meet production demands.

85. On average, Named Plaintiff worked through his meal break approximately twice per week.

86. On average, Named Plaintiff took shortened meal breaks of only ten (10) minutes approximately once or twice per week.

87. Defendant Merck's supervisors were aware that Plaintiffs worked through meal breaks and directed the production demands that led to the inability to take a meal break.

88. Defendants do not have a system for employees to adjust their time and correct an erroneous deduction in order to be paid for compensable work activity during

meal breaks.

89. This automatic deduction policy applied to all Plaintiffs, and all Plaintiffs were similarly affected by this policy.

90. As such, Defendants regularly failed to properly compensate Plaintiff for all hours worked, including regular and overtime hours worked.

## **ADA-RELATED FACTUAL ALLEGATIONS**

91. On or about February 2024, while employed with Defendant Merck, Named Plaintiff was diagnosed with severe obstructive sleep apnea after participating in a sleep study.

92. Named Plaintiff's obstructive sleep apnea is a physical impairment that causes his throat muscles to relax while sleeping, leading to pauses in his breathing that interrupt his sleep.

93. Named Plaintiff also suffers from obstructed breathing and loud breathing while awake as a result of his obstructive sleep apnea.

94. Named Plaintiff's condition is not responsive to treatment.

95. Named Plaintiff's condition substantially limits several major life activities, including, but not limited to, sleeping and breathing.

96. In and around February 2024, after his sleep apnea diagnosis, Named Plaintiff informed his supervisors, including Angel Lynch and Tim Elwell, of his condition.

97. Lynch and Elwell were aware of the symptoms of Named Plaintiff's condition, including that it caused him to breathe loudly while awake.

98. In and around March of 2025, Named Plaintiff started the process of seeking accommodations with Defendant Merck for his obstructive sleep apnea.

99. On or about April 18, 2025, Named Plaintiff was conducting a vaccine inspection.

100. Defendant Merck requires employees to take mandatory eye breaks during vaccine inspections.

101. On or about April 18, 2025, Named Plaintiff was taking an eye break during his inspection.

102. During this eye break, Named Plaintiff was breathing loudly because of his obstructive sleep apnea.

103. Frederico Meadows, Operations Technologist 1, heard Named Plaintiff's breathing and came into the inspection room to check on him. Named Plaintiff and Mr. Meadows then had a brief conversation.

104. Jackie Lee, Senior Specialist, Operations, claimed she heard Named Plaintiff sleeping during this shift, and reported Named Plaintiff to management.

105. On or about April 24, 2025, Named Plaintiff was placed on leave.

106. On or about May 23, 2025, Named Plaintiff was terminated for "sleeping" during his April 18th shift.

107. Named Plaintiff was not sleeping during his shift on April 18, 2025.

108. During overnight shifts, it was not uncommon for employees of Defendant Merck to doze off during their shift.

109. Managers at Defendant Merck were aware of employees dozing off.

110. Defendant Merck indiscriminately terminated some individuals on the spot for dozing off while others did not face consequences for the same.

111. At the time of his termination, Named Plaintiff was performing the essential functions of his position without reasonable accommodation, including operating and troubleshooting manufacturing equipment, inspecting vaccines, preparing products to be sent to packers, and cleaning and sanitizing manufacturing equipment and work areas, among other things.

112. Named Plaintiff was meeting the legitimate expectations of the job at the time of his termination, as evidenced by Defendant Merck hiring him as a full-time employee after a period of contract work.

113. At the time of his termination, Named Plaintiff's accommodation request was pending.

## FLSA COLLECTIVE ACTION ALLEGATIONS

114. Named Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all similarly situated employees.

115. Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who were, are, or will be employees or contract workers at Defendant Merck's Durham facility as operator technicians, or similar non-managerial positions, at any time within the three (3) year period prior to the date of the commencement of this action, through the present, and who did not receive compensation for all regular and/or overtime hours worked.

116. The members of the proposed collective action, like Named Plaintiff, are operator technicians, or are in similar non-managerial positions, have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed at the appropriate rate.

117. Upon information and belief, there are hundreds of putative Plaintiffs and or similarly situated current and former employees and contract workers that fall within the scope of the aforementioned FLSA collectives.

118. The members of the proposed collective action are known to Defendants, are readily identifiable, and may be located through Defendants' records.

119. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named and putative Plaintiffs.

120. Members of the proposed FLSA collectives, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

121. Pursuant to 29 U.S.C. § 216(b), filed as Dkt. 1-3, is the Consent to File Suit as Plaintiff executed by Named Plaintiff. As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

122. Named Plaintiff requests that he be permitted to serve as representative of those who consent to participate in this action and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

**NCWHA CLASS ACTION ALLEGATIONS**

123. Named Plaintiff brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure,

on behalf of himself and all similarly situated employees, for relief to redress and remedy Defendants' violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq*.

124. Numerosity: The proposed classes are so numerous that joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff at this time, upon information and belief, the classes each comprise more than one hundred individuals.

125. Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed classes, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendants' failure to lawfully compensate them. The common questions of law and fact include, but are not limited to, the following:

a. Whether Defendants shaved time from Plaintiffs' hours worked, regardless of the amount of time actually worked;
b. Whether Defendants' time-shaving policy denied workers pay for hours they actually worked as well as promised wages;
c. Whether Defendants' failure to compensate putative Class Members for all hours worked due to Defendants' times-shaving policy violates the NCWHA; and
d. Whether Defendant Merck had a common practice of requiring putative Class Members to work during their meal period despite automatically

deducting thirty (30) minutes from their time for a meal break.

126. Typicality: The claims of Plaintiff are typical of the claims which could be alleged by any member of the putative classes, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendants, as alleged herein, of failing to pay putative class members for all hours worked. Defendants' compensation policies and practices affected all putative class members similarly, and Defendants benefit from the same type of unfair and/or unlawful acts as to each putative class member. Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

127. Adequacy of Representation: Named Plaintiff is able to fairly and adequately protect the interests of all members of the proposed classes, and there are no known conflicts of interest between Named Plaintiff and members of the proposed classes. Named Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

128. Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damage suffered by each of the individual class members may be small for some in the sense pertinent to the class action

analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims were treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications concerning the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

129. Public Policy Considerations: Defendants violated the NCWHA. Just as current employees or contract workers are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees or contract workers may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

130. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed classes.

## <u>COUNT ONE</u>

**Violation of the Fair Labor Standards Act**

29 U.S.C. §§ 206, 207

**Brought by Plaintiff on Behalf of Himself and All Similarly Situated Employees**

131. Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

132. At all relevant times, Defendants have been and continue to be an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

133. At all relevant times, Defendants have employed, and continues to employ, "employee[s]," including Named Plaintiff, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

134. At all relevant times, Defendants have had gross operating revenues in excess of $500,000.

135. The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendants, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed more than forty (40) hours in a single workweek.

136. Defendants failure to pay Plaintiffs for all hours worked, and at the appropriate overtime rate for hours worked in excess of forty (40) per week, in weeks where Plaintiffs worked over 40 hours, although, upon information and belief, Defendants knew of their obligations under the law, entitles Plaintiffs to liquidated damages in an amount

equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendants cannot show they acted in good faith, and a three (3) year, rather than two (2) year statute of limitations applies, since Defendants' actions constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

137. As a result of Defendants' unlawful acts, Plaintiffs have been deprived of compensation for all required hours worked, and appropriate compensation for all overtime hours worked, and are entitled to recovery of such amounts, liquidated damages, post-judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

138. Plaintiffs and putative plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

**COUNT TWO**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.6**
**Brought by Plaintiff on Behalf of Himself and All Similarly Situated Employees**

139. Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

140. The class period for this cause of action is at least two years from the date of the filing of the initial complaint.

141. At all relevant times, Defendants employed, and/or continue to employ, putative Plaintiffs and Rule 23 class members within the meaning of the NCWHA.

142. Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday.

143. "***Once a promise is made by an employer, that employer must pay all promised wages, including wage benefits, accruing to its employees based on any policy, agreement or practice that the employer has established***." *See* North Carolina Department of Labor, *Promised Wages Including Wage Benefits*, https://www.labor.nc.gov/workplace-rights/employee-rights-regarding-time-worked-and-wages-earned/promised-wages-including.

144. Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendants were required to pay Plaintiff and putative class members all wages, when due, for all promised earned and accrued regular, straight, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

145. Moreover, the FLSA's Savings Clause pursuant to § 218(a) provides that employers should comply with the more stringent of the FLSA and state wage and hour laws. Because the NCWHA provides more stringent protection than the FLSA, the FLSA does not preempt the NCWHA.

146. Every employer shall maintain complete and accurate records that document, in relevant part, the hours worked each workweek, and all other records required to compute wages. 13 NCAC 12.0801.

147. Defendants intentionally refused to pay all wages due, including wages for all hours worked, as accurately recorded by Plaintiffs, and as outlined in the preceding paragraphs of this Complaint, to Plaintiff and putative class members in violation of the

NCWHA.

148. Defendants were aware that Named Plaintiff and putative Plaintiffs were not receiving all straight-time wages for all hours worked up to forty (40) pursuant to the promised straight-time rate.

149. Defendants employed Named and putative Plaintiffs within the State of North Carolina.

150. Consistent with the above, Defendants' failure to pay Plaintiffs all owed, earned, and promised wages violated N.C. Gen. Stat. § 95-25.6.

151. As a result of Defendants' unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

152. Defendants' failure to pay Plaintiffs all owed, earned, and promised wages, even though, upon information and belief, Defendants knew of their obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

153. Due to Defendants' unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

**<u>COUNT THREE</u>**
**Disability Discrimination in Violation of the Americans with Disabilities Act**
**42 U.S.C. § 12112(a)**
**Brought by Named Plaintiff on Behalf of Himself**

154. Named Plaintiff incorporates by reference all preceding paragraphs as if the

same were repeated here verbatim.

155. The ADA makes it unlawful for covered entities to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a).

156. Defendant Merck is a "covered entity" as defined by the ADA because it is an employer that is engaged in an industry affecting commerce with fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. 42 U.S.C. §§ 12111(2), (5).

157. Named Plaintiff is a qualified individual with a disability because, at the time of his termination, he performed the essential functions of his position without reasonable accommodation. 42 U.S.C. § 12111(8).

158. Named Plaintiff's obstructive sleep apnea is a disability, as defined by 42 U.S.C. § 12102, because it is a physical impairment that substantially limits Named Plaintiff's major life activities of sleeping and breathing. 42 U.S.C. § 12102(1)-(2).

159. Named Plaintiff made Defendant Merck aware of his obstructive sleep apnea.

160. Named Plaintiff submitted a reasonable accommodation request for his obstructive sleep apnea.

161. Named Plaintiff was discharged because of his obstructive sleep apnea and while his reasonable accommodation request was pending.

162. Named Plaintiff was discharged under the false pretense that he was sleeping during a vaccine inspection.

163. In reality, Named Plaintiff was discharged because of his disability. His

discharge constitutes discrimination in violation of 42 U.S.C. § 12112(a).

164. Plaintiff is entitled to back pay, front pay, past pecuniary losses, and prejudgment interest pursuant to 42 U.S.C. § 12117(a), which incorporates 42 U.S.C. § 2000e-5.

165. Plaintiff is also entitled to reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 12117(a), which incorporates 42 U.S.C. § 2000e-5(k).

166. Additionally, since Defendant Merck's violations of ADA, as alleged herein, were intentional, willful, knowing and malicious, or with reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover compensatory and punitive damages from Defendant Merck, pursuant to 42 U.S.C. § 1981a(b)(1).

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff, on behalf of him and all those similarly situated, prays that this Honorable Court:

1. Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as representative of all those similarly situated under the FLSA collective action;

2. Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiff as representative on behalf of all those similarly situated under the NCWHA classes;

3. Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

4. Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a) as applicable;

5. Award Plaintiffs and all those similarly situated attorney's fees, costs, and disbursements as provided by FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d);

6. Award Named Plaintiff past pecuniary losses, interest, compensatory damages, and punitive damages, as a result of Defendants' violations of the ADA, pursuant to 42 U.S.C. § 12117(a) and 42 U.S.C. § 1981a.

7. Award Named Plaintiff reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 12117(a).

8. Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this March 12, 2026.

*/s/Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
S. Byron Frazelle (NCSB No. 59771)
Laura Fisher (NCSB No. 62357)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
215 S. Academy St., Cary, NC, 27511
Tel: (919) 741-8693

Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
sbfrazelle@gildahernandezlaw.com
lfisher@gildahernandezlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that on March 12, 2026 a true and correct copy of the foregoing **PLAINTIFF'S FIRST AMENDED COLLECTIVE/CLASS ACTION COMPLAINT** was delivered via the CM/ECF system to the following:

Stephen D. Feldman
N.C. State Bar No. 34940
sfeldman@rbh.com
**Robinson, Bradshaw & Hinson, P.A.**
434 Fayetteville Street, Suite 1600
Raleigh, North Carolina 27601
Telephone: (919) 239-2600
Brendan Biffany
N.C. State Bar No. 54761
bbiffany@rbh.com
Jazzmin M. Romero
N.C. State Bar No. 56585
jromero@rbh.com
Robinson, Bradshaw & Hinson, P.A.
600 South Tryon Street, Suite 2300
Charlotte, North Carolina 28202
Telephone: (704) 377-2536
*Counsel for Merck Sharp & Dohme LLC*

*/s/Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
S. Byron Frazelle (NCSB No. 59771)
Laura Fisher (NCSB No. 62357)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
215 S. Academy St., Cary, NC, 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
sbfrazelle@gildahernandezlaw.com
lfisher@gildahernandezlaw.com
*Attorneys for Plaintiffs*